The first case for argument is 14-1357, Head-Wear Technologies v. KSHIMPP. Mr. Franklin, we've got two cases, so we're doing them, I guess they're scheduled to be argued separately. That's our preference, Your Honor. Sure. Depending on how the court wishes to do it, we could even do the other case first. Well, why don't we keep it the way it is? That's fine. Thank you, Your Honor. May it please the Court, Jonathan Franklin for the appellant Hear-Wear. This is one of two cases being argued today involving related patents. While the patents are similar, their claims are different, and they were litigated separately and decided separately in the PTO based on different records and different combinations of references. Nevertheless, there are at least two issues that are common to both cases, and I'd like to begin by discussing those issues in the context of the 382 patent, which is at issue in this case. First, in holding all of the claims of that patent invalid as obvious, the Board erred in finding that the prior art disclosed the sufficiently rigid connector recited in Hear-Wear's claims. Because the prior art did not disclose that element of Hear-Wear's claims, there was no appropriate basis for finding the patents invalid. Second, even assuming for the sake of argument that the prior art did disclose all of the elements of Hear-Wear's claims, the Board also erred in effectively discounting or discarding Hear-Wear's evidence that one skilled in the art would not have been motivated to employ the elements in the combination to arrive at the Hear-Wear patent. Let me ask you, I find the reliance on the Fretz disclosure pretty persuasive. Let me just ask you as a housekeeping matter, why Fretz isn't applicable to the 1369 case? It's not applicable because it was not a reference that was cited by the reexamination requester or considered by the Board. In the prior case involving the same two parties, which Judge Davis clearly the proposition that the record before the PTO is the record before this court and you can't pick a reference out that was not cited by the reexamination requester. In fact, the reexamination statute itself, which is the prior version, 35 U.S.C. 311, makes clear that only those references that are cited and relied on by the requester are required for consideration in a reexam. So yes, Fretz is an issue in the 382 patent. It is not an issue in the 562 patent. And why isn't what the Board said and the Board's reliance on Fretz sufficient? Fretz is a different technology, Your Honor. It did not involve the key technology of the Hear-Wear patent, which is a behind-the-ear, it's a hybrid device involving one part of the ear. Fretz, all of the electrical components were behind the ear and you had a hollow sound tube that was attached to a soft foam ear tip in the Fretz reference. What Hear-Wear patents require is a connector with sufficient rigidity to insert and remove an in-canal component that includes a speaker. All Fretz teaches that its tube can position a soft foam ear tip for conducting sound from a device where all of the components are behind the ear. So there's no teaching in Fretz about any connector that would be sufficiently rigid to insert or remove an in-canal device having a speaker component such as a Hear-Wear's. Also... Well, I mean, how do we know that? I mean, Fretz does talk, Fretz doesn't exactly talk about what the material is for the use for the tube, but it discloses a flexible kind of material. How do we know that it's not sufficiently rigid to satisfy the claim? All we know, and again, the burden is on the board and the requester to point in the prior art to evidence in the prior art that is the element of this claim. When you say, how do we know, then they had the burden of showing that Fretz... Well, but they do. I mean, they cite the material in Fretz which talks about sufficient rigidity and the flexibility, and they cite several examples of materials that would suffice. So why isn't that sufficient? Because there's no showing in the prior art that those materials are of sufficient rigidity to insert and remove a much different device. In the blue brief, you say, at page 48, at best, and now I think this is a concession, Fretz discloses a tube that is rigid enough to insert and remove a soft tip. Yes. That's correct, Your Honor. We're not backing away from that, but that's all Fretz discloses. Hearwear has much more than that in its patent. It has the speaker component, it also has the ear mold that is formed to fit inside one's ear canal. That's very different technology from Fretz. Fretz was a different kind of technology. Now, Chenib, which was the other reference, was, in fact, an in-canal device. The problem with Chenib is the handle, which Chenib has in its reference, is neither a connector nor part of one. So, yes, Fretz has... But the board found, to the contrary, the board found that the handle 38 was part of the connector, and I know that you take issue with that, but why isn't there substantial evidence to support that? There's not substantial evidence, Your Honor, because the principal evidence we're relying on here is the Chenib reference, and if one looks at the depictions and the descriptions in Chenib, one sees that the handle, which is appropriately described as a handle and not a connector, 38, yes, is attached to the in-canal device, the in-canal component. It is not, it goes around the cable that forms the connector, but it is not the connector, and we're looking at, again, at figures 20 and figure 3, which are reproduced in the blue brief. You can see figure 3 at page 10 of the blue brief, and you can see figure 20 at page 8. And doesn't the signal cable in figure 20 run through the handle? Through, yes, but what the handle, and again, I'm moving now to the description of the handle in the reference. The handle is described as serving the function of strain relief on the connector. If it were part of the connector, it couldn't relieve strain on the connector. It would be adding to the strain of the connector. Well, it depends, I suppose, on whether, if the handle is connected to the nut, what looks like a nut in figure 20, that is designated as number 48, and if that is regarded as part of the connector, then the connector and the handle can affect strain relief, because you would be pulling on the handle, and that would be part of the connector. But your argument seems to be that, well, the nut, which is at 48, is actually part of the completely in-canal device. Yes, it is. But why isn't that ambiguous, as to which it is, at which point the board is entitled to conclude that it was the former, not the latter? I would say, to the extent there's any ambiguity, it works in our favor, because the board has to identify, and it has the burden of proof here, it has to identify the element in the prior art. But I would also turn to page 10 of the rubric, which has figure 3. Figure 3 is identified in Chenise as depicting the same component, and if you look at figure 3, the protruding part has to be the handle. Well, it's not marked as the handle. I don't know why it has to be the handle. It can't be anything, the handle can't be anything other than that. Is it possible that 38 isn't part of either the connector or the earpiece? Well, I think it's possible that it is a separate, a piece that attaches to the earpiece. So whether you want to call it part of the earpiece, and I think the board fixated a bit on whether it was part of the earpiece. It really doesn't matter whether it's part of the earpiece or not. Well, but doesn't that create some ambiguity if it's not part of either? Well, not if it's not part of the connector, because it has to be part of the connector in order to suffice to supply the element of Hearwear's plans. The prior art here, which is identified by Chenise, Reiter is another example of the prior art. They used things, handle and Reiter, a retrieval line that were attached to the in-to-out component as the mechanism for inserting and removing. That's what distinguishes Hearwear's patent. Hearwear doesn't use that. Hearwear uses the connector itself, and the connector itself is of sufficient rigidity so that it can be used to insert and remove. That's a different element. That's not an element that was in the prior art, and this court, I think, is as competent as the board is to determine what Chenise discloses, and to the extent Chenise doesn't say it's a connector, then we should prevail in this case. Well, we may be competent in the sense that we're looking at the same materials, but our findings of fact, and as such, I'm wondering why the finding that the board clearly made, and I think we can agree on that, that the board made a finding that this 38 was part of the connector. It's not clear to me that there's any reason to think that that finding is totally at war with the diagrams, figures 20 in particular, and 3. I think it is. We think it is, Your Honor, at war with those, but even if it's not, again, one has to identify that these are connectors, so if one cannot discern from these depictions that they are connectors, is part of the connector, we ought to win this battle. Well, you would agree with me, would you not, that if 48, the nut on figure 20, I'm calling to be an enlarged segment that attaches to 50, the in-canal portion, at least, of the in-canal device. Yes. If that is, it appears to be connected to the handle 38, and if that is deemed to be part of the connector, then 38 is part of the connector, correct? I think we, again, I don't want to make... That would be true. It would be a much harder case. I understand you don't agree with that proposition, but if the proposition is true, then the handle would be part of the connector, right? If what you're saying is true, that the handle attaches to something that is part of the connector, then we would have a hard time arguing that it's not part of the connector. I don't want to make the concession, but I think we would have a hard time doing it, but again, we don't have to. It's not part of it. The connectors are the wires that are inside there, and the patent also describes the handle as going concentrically around the wires. Around the wires. Not attached to them, around them. Right, but that's the way you affect the strain relief. I mean, the strain relief can be affected as long as you don't have the pulling that effectively pulls on the wires. Exactly. So, if you have a device that has the wires going through it, that has a handle, and then has a nut at the end to which the handle is attached, and all that is part of the connector, then you've got your strain relief, and you've got it all part of the connector. I go back again, though, Your Honor, to what is a connector? A connector is something that connects two things. It connects, in this case, the in-canal component, and in the Shanib case, the other external device that's not pictured. Nothing in that nut that you're pointing to, or the handle, attaches to the other end. It is not part of a connector, and that's the difference. The other end is not depicted in this. The other end is the external audio device that is off the picture in this case. Well, but the nut doesn't have to connect to the other end. All it has to connect to the other end is some component of the set of components that are the connector, and the set of components can contain a handle, could contain the wires, and my submission is could it not arguably also include the nut? The nut, though, is not something that is part of it. We're going around in circles here. I don't want to say, I do understand what Your Honor is saying, but I do want to emphasize that what is being connected here are the two elements, the in-canal element and the external audio element. And the only thing that's connected to the external audio element is the wires and cables 39 and 37. Those are the connectors. I think I'm into my rebuttal time. I'd like to reserve the remainder if I could. Thank you. Good morning, Your Honors. May it please the Court. Robert Stern for Appellee Hint. With me at Council table we have John Wright and Jason Eisenberg. Let's go right to it if we could. There's substantial evidence to support the Board's finding. There's a very detailed decision that the Board prepared. They looked at the entire administrative record. The administrative record is extensive. Substantial evidence under the APA requires that to be found. They looked at the four declarations. We had declarations from both inventors and chinips, going to your point, Judge Bryson, about what the handle is. We had declarations from two technical experts. They found that declaration from Hempst, Dr. Thompson, to be more persuasive on the issues at hand. Was the Board correct when, as I understand it, it refused to evaluate evidence regarding the hearing aid aesthetics, saying that it wasn't required or wasn't allowed to do that in connection with the motivation to combine? The Board did look at those arguments carefully and found that the technical reasons were the reasons why the combinability was proper. They looked at the aesthetic arguments carefully, as the Board decision shows. The arguments were that the insertion and the removal of the handle 38 in chinip would either be unsightly or cause damage to the ears of the wearer. But the reality is that these claims are extremely broad. These claims cover an earpiece auditory device. They don't even cover a hearing aid. The claims are very broad. The critical claim limitation is this connector, which has a functional recitation of being sufficiently rigid to allow it to be inserted and removed. The fact is that the patent itself only discloses a retrieval line for insertion. The retrieval line is not even shown in the patent. It is connected to element 14. The patent teaches that the connector can be made up in the various embodiments shown of multiple components. The chinip handle is part of wires 39, the outer sheath, and the inner wire is 37. So that the Board's interpretation of the reference, which is in compliance with what the central reexamination unit found, is fully supported by the record. They looked at the Shinib patent. Even, let's assume that there's a problem with the aesthetics. Given that the Board looked at both Fretz, looked at Fretz as well, the aesthetics question doesn't arise there, does it? No, it does not. So if we buy the Fretz combination argument, then we don't even get to aesthetics. That's true, Your Honor. And going back to the Fretz reference, we were told that they're entirely different technologies. Well, that's not correct. The record doesn't support that. We're talking about hearing aids. Fretz is a hearing aid. Shinib is a hearing aid. All the references in the six combinations are hearing aids. Now, the claims, as I said earlier, are very broad. It goes to an earpiece auditory device. At the very beginning of the 382 patent, it talks about how this device can be used in many other applications other than hearing aids. It could be used by security forces. It could be used by police. It could be used by news anchors. It could be used by people who just want to listen to a source of information, as Claim 3 directs us to. The fact is that they're asking this Court to now narrow these claims. These claims are very broad. There is no support in the specification for what sufficiently rigid covers. Sufficiently rigid was added five years into the prosecution of this case. They couldn't get the claims allowed. We brought this up at the Board when I did the oral argument. They brought this concept of sufficiently rigid in to get all these claims allowed. The reality is that sufficiently rigid is a functional term. It's nowhere defined in the specification. It was not in the original filed claims. So we don't know what sufficiently rigid is. So let's go to FRETS for a moment. Sufficiently rigid is the tube that is used in FRETS, the sound tube of this hearing aid that is inserted into the ear of the user. There's only three pieces that make up a hearing aid. The behind-the-ear component, which has the electronics and the microphone for picking up the sound, the speaker, the receiver that fits in the ear, and the connector that connects the two together. In this claim, it only talks about physical connection. It doesn't talk about electrical connection in this claim. It's very broad. The functional teachings of the patent don't explain any reason why you couldn't use FRETS or you couldn't use SHIDEM. The reality is that you need to insert and remove. Insertion is only disclosed in the patent specification with this undisclosed retrieval line that attaches to element 14. There's nothing else. In one embodiment, connector 20 is attached physically and electrically to element 14. So for insertion, the only thing that's disclosed is the retrieval line, which we see is the only disclosed embodiment. It has nothing to do with this physical element, this physical element for pushing or pulling in this cable that they used as the basis for sufficiently rigid. So again, I ask this court, where does sufficiently rigid begin and end in terms of claim scope? Now, we have to imply broadest reasonable interpretation in the center party reexam process, as we all know. So the board was appropriate in interpreting the claims and interpreting SHIDEM, interpreting FRETS, and all the other references that are before us. They also looked to the declaratory evidence in the four declarations. They looked at that very carefully. The board's decision enunciates exactly what their analysis was. So I submit to you, Your Honors, that substantial evidence is clearly satisfied with respect to each one of these six rejections of each of the claims. Can we turn to the issue that I was discussing with Mr. Franklin, the Sheneb reference and exactly what Sheneb teaches with respect to what is the connector? I understand Mr. Thompson, principally Mr. Thompson, I think, says in his declaration that Sheneb's handle 38 is part of the connector. But looking at figures 20 and figure 3 of Sheneb, tell me why I should conclude that that's plainly correct. Well, this is what the examiner did, was look at this picture and the description in Sheneb. The examiner made that conclusion and so did the board. The question is, is it right? Is it a correct reading of these diagrams and the Sheneb reference in general? Well, let me start by saying that I think we've heard a lot of attorney argument today and a lot of attorney argument in the briefs on this issue from the other side. So let's take a look at this and apply common sense to what we're looking at here. First of all, the claim does not require that the entire connector be sufficiently rigid. I understand that. You understand that. So you've got a little chunk of it that is the handle. Correct. Okay, fine. The question, though, comes down to what's the handle attached to? Is it attached to the connector or is it attached to the completely within canal piece? It's clearly attached to the connector, Your Honor. Tell me why that's so clear. I mean, just to assert. Sure, sure. As you can imagine, I've spent quite a bit of time thinking about this. All right, well, let's hear the products of your thought. Let's get the distillation of that, if we could. Okay, so we have a wire. So that would be attorney argument as opposed to common sense. There you go. We have a wire 39, as the Board notes. We have the internal wire 37 that are inside. They electrically connect the signal to the speaker that is in the earbud. We also have this handle concept, which is used to reinforce this cable 39 as it goes to the earbud. That's what's used to insert and remove, according to Shinnop. The reality is that cable 39 is either attached right at the edge of handle 38 or it goes through the middle of handle 38 and it's attached internally. Okay, so what happens is when you push it in, you use either the outer portion 38 to push it in or you get right behind 38 and push it in. When you say push it in, are you talking about pushing in the entire complex of items that include item 50 and the receiver? Yes. You push it into the ear canal. So that brings us to the $64 question, which is whether 38 is part of 50 or whether 38 is part of the connector. 38 is part of the connector. So you say. Now tell me why. Well, the reason why is because in order to provide the strain relief of the two wires 37 internal to cable 39, the strain relief is provided when you pull out, for example, the wire. Let me put it to you this way. Suppose that I were to look at this and conclude that 38 is integral with both the nut 48 and the entire within canal component 50. It's all one piece. It would still operate to effectuate strain relief for the wires because you've just pulled the whole thing out. The question is, is it integral or is it not integral, right? Isn't that what we really need to know in order to determine whether this is part of a connector? No. The claim is very broad, Your Honor. It speaks in terms of function. So there's nothing in the 382 patent specification that teaches multiple components that make up the connector. There is an embodiment that shows connector 20 is attached to this plate 14, which is connected to the speaker assembly in the disclosure, and that's where this undisclosed retrieval line is. So the idea of connecting the connector physically to the speaker assembly is contemplated by the patent because their connector, as the specification clearly teaches, states at column 13, lines 49 through 59, it says the size, shape, dimension of connector 20 shown in figure 1 are by way of example only as connector 20 can be of numerous sizes and shapes. In addition, elements not depicted in figure 1 may include a connector 20. For example, in one embodiment where speaker fastener 14 is part of connector 20, fastener 14 includes a retrieval line for aiding a user in retrieving and or inserting unit 10 into and out of the user's ear canal. On the other hand, elements included in figure 1 may be absent from connector 20. Moreover, as mentioned in at least one embodiment, connector 20 includes speaker 13, fastener 14, and or fastener 31. I would submit to you, Your Honors, that this claim talks functionally about insertion and removal. So the concept to a person of ordinary skill in the art of handle 38, which also provides strain relief, but it's taught for insertion and removal, is clearly applicable to these claims. And beyond that, as we noted in our brief and as we noted to the Board in our oral argument, and they note in their decision, look at the numbering here. We have cable 39 in the same numbering scheme as wires 37 and handle 38, whereas the speaker side has 40 and 50. So to translate to terms that I was thinking along, tell me if this is a fair synopsis of what you were just saying, is that given the breadth of the patent, it doesn't matter whether 38 is integral with the completely in the ear component, completely in canal component or not, because the patent allows the receiver to be part of the connector. And therefore, even if the receiver in the Shenib reference is part of the connector, is attached to the handle 38, that's all part of the connector. That's totally correct, Your Honor. Think about how the person is putting their hearing aid into their ear canal. They usually are older, often. They can't see their ear canal. They're fitting it in based on feel. They grab hold of this sufficiently rigid connector portion and they push it in and they pull it out. There's no teaching in the patent that says that it wouldn't be integral. I mean, of course it has to be integral. When you pull it out, you don't want to leave the speaker in the ear. You don't want to break it off. You want the whole thing to be sufficiently rigid, but integral so that you can insert it and pull it out. The concept of having a portion that is sufficiently rigid for insertion and removal is what the claim covers in an earpiece auditory device. The Board got it right. The record is fully supported. It satisfies the Administrative Procedures Act. We argue that it should be fully affirmed. Thank you. Thank you, Your Honor. Judge Bryson. Judge Bryson, I'd like to follow up, if I might, on the colloquy that we had, and I think you repeated it with my colleague over here. If you would turn to page 182 of the appendix, Your Honor was focusing on item 48 of the Chenier reference, which I think was described as a nut maybe, but it actually is not. If you look at page 182 of the joint appendix, 48 is the receiver assembly. That's what it is. It is not a nut. It is the receiver assembly. So what you have here is Chenier's connector is attached to the receiver assembly, but there is no other part of it attached to the external audio device. But then if you look at the material that your opposing counsel was referencing from the patent, it does seem that the connector can include the speaker. No, it can't. I'm sorry. Connector includes speaker 13. But the claims of the patent distinguish from, distinguish between the, Your Honor, look at the claims of the patent. The claims set distinguishes between the connector and the in-canal component that involves the speaker. So the connector is different from, it is something that connects the two components together. Different from the speaker? It is connected to, but it is not the same as the speaker. But that seems to, tell me why that sentence that the opposing counsel read. Which specific sentence are you referring to? The sentence is that column 13, lines 57 through 59. Moreover, as mentioned, in at least one embodiment, connector 20 includes speaker 13, fastener 14, and or fastener 31. At least one embodiment, connector 20, includes speaker 13, fastener 14. That is one embodiment. Right, one embodiment of the claim. What I would emphasize, Your Honor, though, is that the connector has two ends to it. And to the extent that one end is connected to the speaker, the other end, because it's a connector, it has to connect to the behind-the-ear component. It still must have the other end connected to the behind-the-ear component. And that's what you don't have in the Shanib reference. You have a handle that is connected to the speaker, but you have no other end that's connected to anything. I'm not sure I understand. Shanib doesn't even show the behind-the-ear component. It just has the wires trailing off the edge of the page. Now, presumably, there is some kind of electronic device at the other end of the wires, and one can assume the behind-the-ear component would be a natural device to have there, right? At the other end of the wires, yes. But the handle, that is what the board... No, no, the handle is only a short component. If it's a portion of the connector, it's only a short component of it. And that's all right. I think we can all agree that the handle doesn't have to be the full length of the connector, right? Yes, but it does have to be part of the connector. And in the patent, we have the connector connecting two things, and you have the one end connecting to the speaker and the other end connecting to the other, but you don't have that with the handle. I know I'm out of time, but I might also just point out, Judge Wallach, on the Fretz reference, while we don't have the aesthetic issue, we do have another issue on the Fretz reference with regard to the motivation to combine that one in terms of the excess vibration that would be produced in the boarding. Our review did not evaluate that argument. So, while we don't have aesthetics, we do have another argument on Fretz. And I thank you. So, I think it's time to move on to the closing.